**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN T. FITZGERALD

                                Plaintiff,

        - v -                                        Civ. No. 6:02-CV-1000
                                                                     (DNH/RFT)

JO ANNE B. BARNHART, Commissioner of
Social Security,

                                Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

AMDURSKY, PELKY, FENNELL & WALLEN, P.C.    GREGORY R. GILBERT, ESQ.
Attorney for Plaintiff
26 East Oneida Street
Oswego, New York 13126

HON. GLENN T. SUDDABY                       WILLIAM H. PEASE, ESQ.
United States Attorney for the                   Assistant United States Attorney
Northern District of New York
Attorney for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261

**RANDOLPH F. TREECE**
**UNITED STATES MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**

      In this action, Plaintiff John Fitzgerald moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits.[1] Based upon the following discussion, this Court recommends that the Commissioner's decision denying Social Security benefits be **reversed** and the case be **remanded** pursuant to the

---

[1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs, though oral argument was not heard. Dkt. Nos. 6 & 7. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

sixth sentence of 42 U.S.C. § 405(g) for consideration of new and material evidence.

## I.  BACKGROUND

### A.  Facts

The facts set forth in Fitzgerald's Brief under the heading "FACTUAL HISTORY" as supplemented in the Commissioner's Brief under the heading "STATEMENT OF THE CASE" are adopted.  Dkt. No. 6, Pl.'s Brief at p. 3; Dkt. No. 7, Def.'s Brief at pp. 2-10.  Generally, Fitzgerald alleges a disability due to low back pain stemming from osteoarthritis.  Dkt. No. 5, Admin. Transcript [hereinafter "Tr."] at 62-64 & 67.

### B.  Procedural History

On August 24, 2000, Fitzgerald filed for disability insurance benefits alleging a disability onset date of May 25, 1999.  Tr. at 62-64.  That application was denied initially and on reconsideration.  Tr. at 42-44.  On September 21, 2001, a Hearing was held before Administrative Law Judge (ALJ) John P. Chwalek (Tr. at 24-41), and on October 29, 2001, the ALJ issued an unfavorable decision against Fitzgerald (Tr. at 10-20).  On June 21, 2002, the Appeals Council concluded there was no basis under the Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  Tr. at 6-7.  Exhausting all his options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's

findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla[, it is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step

analysis, referred to as the sequential evaluation process, set forth in the Social Security Administration Regulations.  20 C.F.R. § 404.1520.  At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations.  *Id*. at § 404.1520(d).  The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467.  Where the claimant has such an impairment, the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity.  *Id*.  If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[2] to perform his or her past relevant work despite the existence of severe impairments.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

      Initially, the burden of proof lies with the claimant to show that his or her impairment(s)

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 404.1545(a).

prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Chwalek's Findings

Fitzgerald was the only witness to testify at the Hearing. Tr. at 24-41. In addition to such testimony, the ALJ had Fitzgerald's medical records consisting of treatment reports and opinions from various treating and/or examining physicians, including, 1) Chris LaBounty, M.D.; 2) A.L. Lee Memorial Hospital; 3) Tesoriero Chiropractic Office; 4) Hasan Zakariyya, M.D.; 5) Kalyani Ganesh, M.D., Orthopedic Consultive Examination; and 6) R. Finley, M.D., Non-Examining Agency Residual Functional Capacity Assessment. Tr. at 107-69.

The ALJ stated that Fitzgerald meets the non-disability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through the date of the decision. Tr. at 19. Using the five-step disability evaluation, ALJ Chwalek found that 1) Fitzgerald had not engaged in any substantial gainful activity since May 25, 1999, the onset disability date; 2) he has severe medically determinable impairments, namely, degenerative joint disease and insulin dependent diabetes mellitus secondary to pancreatitis, secondary to ethanol abuse; 3) Fitzgerald's

severe impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) he has a residual functional capacity to perform the full range of sedentary work and as such cannot perform any of his past relevant work; but 5) given his RFC and in considering other vocational factors such as his age, education, and work experience, Fitzgerald could perform work available in the national economy. Tr. at 19-20.

### D. Fitzgerald's Contentions

Plaintiff raises four arguments in support of the relief sought: 1) the ALJ erred in failing to assess the combined impact of his other severe impairments, namely pancreatitis and diarrhea, in assessing effects on RFC; 2) the ALJ erred in determining Fitzgerald could perform the full range of sedentary work; 3) the ALJ erred in failing to give "controlling weight" to the treating physicians' documented restrictions; and 4) the Appeals Council erred in failing to assess the new evidence submitted from treating physician Zakariyya. We find, as explained fully below, that the ALJ committed legal error in finding Fitzgerald had the capacity to perform the full range of sedentary work. We further find that the Appeals Council's failure to consider the new evidence and failure to set forth reasons renders, to some extent, Plaintiff's claims unreviewable until such evidence is considered first by the Administration, or sufficient explanations are provided as to why the evidence would not be considered. Since points one, two, and three all relate to the ALJ's assessment of Fitzgerald's RFC, the Court will consider them together prior to addressing the new evidence claim.

#### *1. Residual Functional Capacity*

Essentially, Fitzgerald claims the ALJ committed several errors in assessing his residual functional capacity (RFC), that being, a finding that Fitzgerald could perform the "full range of

sedentary work" was in error, the ALJ failed to consider the combined effects of all Fitzgerald's severe impairments, and the ALJ failed to afford controlling weight to Fitzgerald's treating physician.

At Step Four of the disability analysis, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs as sedentary, light, medium, heavy, and very heavy.[3] 20 C.F.R. § 404.1567. If the applicant can still perform the kind of work he or she performed in the past, they are deemed not disabled. *Id*. at § 404.1520(e). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a).

In assessing Fitzgerald's RFC, the ALJ concluded Fitzgerald was capable of performing the full range of sedentary work as described under 20 C.F.R. § 404.1567(a). Tr. at 16-18. Specifically, the ALJ stated that Fitzgerald retains the residual functional capacity to

> lift and/or carry 20 pounds, 10 pounds frequently, stand and/or walk about 2 hours and sit about 6 hours in an 8-hour workday (if allowed to alternate those activities at will), is unlimited in the ability to push and/or pull with all extremities, occasionally can engage in all postural activities and has no manipulative, visual, communicative or environmental limitations. In sum, he can engage in a full range of sedentary exertional level work.

---

[3] These classifications are based according to the "degree of primary strength requirements of the occupations[,]" which consist of "three work positions (standing, walking, and sitting) and four worker movements of objects (lifting, carrying, pushing, and pulling). S.S.R. 83-14, 1983 WL 31254, at *1, *Program Policy Statement Titles II and XVI: Capability to do Other Work–The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments*, (S.S.A. 1983).

Tr. at 17.

The ALJ then determined that, in light of these limitations, Fitzgerald could not perform his past relevant work since such work required a minimum level of exertion required for light work. Tr. at 19. In making this RFC assessment at Step Four, the ALJ gave full credibility to Fitzgerald's allegations of disabling symptoms "to the extent that the claimant is limited in standing, walking and sitting due to a need to alternate those activities and cannot stand and/or walk more than 2 hours in an 8-hour workday." Tr. at 17. The ALJ also focused on the objective medical evidence and various medical reports and specifically noted that the opinions of the Administration's medical record review physicians who did not physically examine Plaintiff had been given "little weight." *Id*. While Fitzgerald's RFC rendered a return to his past relevant work impossible, at Step Five, the ALJ considered Fitzgerald's RFC, age, education, and vocational profile in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations and determined that Rules 201.21 and 201.28 direct a finding of "not disabled."[4] *Id*. at 19.

The ALJ specifically prefaced his RFC finding on the condition that Fitzgerald be allowed to alternate sitting, standing, and walking "at will." Despite such "limitation," the ALJ found Fitzgerald was capable of performing the full range of sedentary work. The Social Security Regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a

---

[4] The criteria for Rules 201.21 and 201.28 are located in Subpart P, Appendix 2, Table 1, entitled "Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s). Rule 201.21 dictates that a younger individual between age 45-49, with a high school graduate education or more, who is skilled or semiskilled (skills not transferrable) is not disabled. Similarly, Rule 201.28 dictates that a younger individual between age 18-44, with a high school graduate education or more, who is skilled or semiskilled (skills not transferrable) is not disabled. Born on September 29, 1955, Fitzgerald was 43 years-old as of the alleged onset date and 46 years-old as of the date of the ALJ's decision.

> sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Generally, sedentary work involves sitting for a total of six hours. S.S.R. 83-10, 1983 WL 31251, at *5, *Program Policy Statement Titles II and XVI: Determining Capability to do Other Work–The Medical-Vocational Rules of Appendix 2* (S.S.A. 1983) (indicating that sedentary work generally involves sitting for a total of six hours); S.S.R. 96-9p, 1996 WL 374185, at *3, *Policy Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work–Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work* (S.S.A. 1996) (same). Indeed, the Second Circuit has held that "the concept of sedentary work contemplates substantial sitting. . . . [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) (noting that "[b]y its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking are occasionally required[]" and remanding the case for calculation of benefits) & *Deutsch v. Harris*, 511 F. Supp. 244 (S.D.N.Y. 1981) (noting that the plaintiff may not fall into the "concept" of sedentary work since "[t]he category of sedentary work may not include occupations which allow a worker to alternate sitting and standing as required for his comfort[]")); *see also Wages v. Sec'y of Health and Human Servs.*, 755 F.2d 495 (6th Cir. 1985) (citing *Ferraris* & *Deutsch* and noting that a claimant who cannot sit or stand for prolonged periods of time, "but must alternate between sitting and standing as required for comfort" is not capable of performing sedentary work); *Rosario v. Sullivan*, 875 F. Supp. 142, 148 (E.D.N.Y. 1995) (noting that the ALJ's determination that the claimant could perform the full range of sedentary work "despite the fact that she had to alternate

between sitting and standing to do so is in stark contrast with the SSA regulations and case law[]").

The Medical-Vocational Guideline Rules in Appendix 2 contain numbered table rules which direct conclusions of "disabled" or "not disabled" and may be used when a claimant can perform substantially all criteria of a particular rule; when, however, the criteria of a specific rule are not met, the rule should only serve as a framework for determining disability, as opposed to administratively requiring a ruling.  S.S.R. 83-11, 1983 WL 31252, at *1, *Program Policy Statement Titles II and XVI: Capability to do Other Work–The Exertionally Based Medical-Vocational Rules Met* (S.S.A. 1983).  A reduction of an individual's exertional capacity, such as where an individual cannot perform the full range of sedentary work, results in an erosion of the occupational base.  S.S.R. 96-9p, 1996 WL 374185, at *4-5.  An erosion of the occupational base does not necessarily dictate a finding of disability, however, "[w]hether the individual will be able to make an adjustment to other work requires adjudicative judgment regarding factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base[.]"  *Id*. at *5.

In the case at bar, the ALJ stated Fitzgerald could perform sedentary work if allowed to alternate sitting and standing "at will."  According to S.S.R. 96-9p, where such need "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded."  *Id*. at *7.  At the Hearing, Fitzgerald provided testimony regarding his exertional limitations:

> **ALJ:** In a typical day, what do you do?  How do you spend the time?
> **Fitzgerald:** I do what I can to help my wife –
> **ALJ:** What is that specifically?
> **Fitzgerald:** Well, I load up the dishwasher, maybe run a vacuum for a little bit.  I can only – whatever I do, I can do for maybe 15, 20, 30 minutes tops, and then I have to stop and rest and lay down.  The back pain gets too

*-10-*

|              |                                                                                                                                                                                                                   |
|--------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | bad.                                                                                                                                                                                                              |
|              | ***                                                                                                                                                                                                               |
| **ALJ:**     | How long do you think you can stand at one time before you have to sit down?                                                                                                                                      |
| **Fitzgerald:** | 30 minutes would be about the maximum.                                                                                                                                                                         |
| **ALJ:**     | How about sitting?                                                                                                                                                                                                |
| **Fitzgerald:** | About the same.                                                                                                                                                                                                |
|              | ***                                                                                                                                                                                                               |
| **Attorney:** | How about – what type of activities tend to bring on the higher level of pain you mentioned?                                                                                                                     |
| **Fitzgerald:** | Mostly sitting for long periods, and if I get carried away on the computer and spend more than a half hour on the Internet or whatever, then that really gets to me.  So I have to take care –                |
| **ALJ:**     | You didn't mention to me – that to me that you get on a computer during the course of the day?                                                                                                                    |
| **Fitzgerald:** | No, I'm sorry.  I don't consider that a hobby, but like I say, if I stay more than half an hour sitting doing that, it really bothers me, so I have to guard against that.                                     |

Tr. at 34 & 37-39.

The ALJ stated he gave full credibility to Fitzgerald's allegations of totally disabling symptoms to the extent he needs to alternate sitting and standing at will.  *Id*. at 17.  Thus, by the ALJ's own finding, Fitzgerald is **not** capable of performing the **full range** of sedentary work, and the ALJ's finding to the contrary and use of the Medical-Vocational Guidelines as directing a conclusion of "not disabled" was in error.  Because Fitzgerald's limitations may have eroded the occupational base, the ALJ was required to make specific findings, which he did not.  His failure to do so constitutes legal error and renders his decision unreviewable by this Court; succinctly, we cannot assess whether the ALJ's finding that Fitzgerald can perform the full range of sedentary work is supported by substantial evidence, thus, a remand is necessary for further elaboration.  On remand, the ALJ should specify factors which will affect the extent of the erosion, such as "the frequency of the need to alternate sitting and standing and the length of time needed to stand."  S.S.R. 96-9p, 1996 WL 374185, at *7.  Consultation of a vocational resource may also be necessary.

### *a. Combined Effect of Other Impairments*

In assessing the above RFC, Fitzgerald claims that the ALJ failed to take into consideration limitations imposed by his chronic impairments, namely pancreatitis and diarrhea. According to the Regulations, if a claimant has multiple impairments, the combined effect of all impairments will be considered "throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523; *see also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995) ("[A]s this court has long recognized, the combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate their combined impact on a claimant's ability to do work, regardless of whether every impairment is severe.") (citations omitted); *Schulte v. Apfel*, 2000 WL 362025 (W.D.N.Y. Mar. 31, 2000). While we agree with the Commissioner's assessment that Plaintiff's diarrhea is not a "severe" impairment, it may nevertheless further limit his ability to sit for prolonged periods of time. As such, the effect, if any, of Fitzgerald's non-severe impairment in combination with his severe impairments should have been considered throughout the disability evaluation. It is unclear from the present record whether the ALJ considered such effects; in any event, since remand is being recommended on two separate bases, on remand, the effects of Fitzgerald's non-severe impairments should be explored.

### *b. Treating Physician Rule*

Plaintiff claims the ALJ failed to give controlling weight to the medical opinions of his treating physician, Dr. Hasan Zakariyya. Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(d)(2); *see*

*also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).  A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (emphasis added) (quoting *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988)); *see generally* 20 C.F.R. §§ 404.1513 & 404.1527.  While the Treating Physician Rule dictates deference regarding the nature and severity of a claimant's impairments, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability).

The ALJ noted that the Administration asked Dr. Zakariyya to list claimant's physical limitations but he failed to submit a complete and detailed report.  Tr. at 16 & 132-36.  The ALJ acknowledged that Dr. Zakariyya stated in such report that Fitzgerald was unable to sit for more than a half hour and stand for more than one hour at a time.  *Id*.  Nevertheless, in assessing Fitzgerald's RFC, the ALJ found Fitzgerald had the capacity to sit for six hours and stand for two (if allowed to alternate at will).  Tr. at 17.  In making this assessment, the ALJ noted the "little" weight he accorded to the Administration's medical record review non-examining physicians, but he never specified what weight, if any, was given to Fitzgerald's treating physician.  Tr. at 17.  The ALJ merely states that he "considered" the reports of the treating source, yet, the ALJ's RFC assessment is clearly in direct contravention to Dr. Zakariyya's, albeit limited, report of Plaintiff's limitations.  *Compare* Tr. at 17 *with* Tr. at 132.  While the Commissioner states various reasons in her Brief  for why Dr. Zakariyya's report should not be given controlling weight, the fact remains

that the ALJ misapplied the Treating Physician Rule when he failed to give controlling weight **and** state supporting reasons for such disregard.  *See* 20 C.F.R. § 404.1527(d)(2) (noting that the Administration will "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  As such, the ALJ committed error in not adhering to the Treating Physician Rule, thereby providing yet another basis for reversal of the ALJ's decision and remand for further elaboration.

### *2. New Evidence*

Lastly, we address Plaintiff's contention that the Appeals Council erred in failing to assess the new evidence submitted from Dr. Zakariyya.  42 U.S.C. § 405(g) provides in pertinent part that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . ." (emphasis added); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1998).  In accordance with this provision, the Second Circuit requires the Plaintiff to show that the proffered evidence is "(1) new and not merely cumulative of what is already in the record . . . (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . [and] (3) good cause [exists] for [claimant's] failure to present the evidence earlier."  *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 43 (internal quotation marks and citations omitted).  Furthermore, the Regulations provide that when "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970.

In its decision, dated June 21, 2002, the Appeals Council concluded there was no basis under the Regulations to grant Plaintiff's request for review. Fitzgerald states that on May 8, 2002, he forwarded to the Appeals Council a Medical Assessment Report prepared by Dr. Zakariyya in April 2002. Plaintiff asserts that prior to the Hearing, his counsel had attempted on a number of occasions to secure such medical assessment from Dr. Zakariyya. Dkt. No. 6 at p. 8. Plaintiff's counsel sent Dr. Zakariyya a request for a medical assessment in September 2001, with a follow up by phone and fax on October 11, 2001. *Id.* Counsel made several more follow up attempts through the fall of 2001 and spring of 2002 before Dr. Zakariyya finally forwarded such assessment to counsel's office during the first week of May 2002. Attached to Plaintiff's Brief as Exhibit A is a copy of Dr. Zakariyya's Medical Assessment Report as well as the cover letter forwarded to the Appeals Council, dated May 7, 2002. Plaintiff stresses the importance of the Report since it not only reiterates some of the restrictions previously noted regarding Fitzgerald's ability to sit and stand, but it also documents Fitzgerald's full range of restrictions. *Id.* at p. 7.

The Commissioner does not contest that Dr. Zachary's Report is new or that Plaintiff had good cause for failure to submit the report earlier. Dkt. No. 7 at p. 14. The Commissioner does, however, contest the materiality of the Report, claiming that Dr. Zachary failed to provide medical findings to support his assessment and thus his "incomplete and unsupported opinion about plaintiff's limitations would not have influenced the ALJ to decide this case differently." Dkt. No. 7 at p. 15. We disagree. "The concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 43 (citations omitted). The ALJ specifically noted that Dr. Zakariyya's initial report was incomplete, or rather, lacked sufficient

detail. Tr. at 16. As indicated above, the ALJ did not state and explain what weight, if any, was given to Dr. Zakariyya's incomplete assessment. While the Commissioner may still find Dr. Zakariyya's new report to be flawed, it is clearly more complete than the first report submitted. Contrary to the Commissioner's contentions, the report is not completely devoid of medical evidence. For example, in response to question number two, Dr. Zachary lists the following clinical findings: Tenderness of lumbar spine, straight leg raising thirty degrees, and x-ray. Dkt. No. 6, Ex. A. While it is true that Dr. Zachary failed to list medical evidence to support each opinion rendered regarding Plaintiff's limitations, in addition to the above, Dr. Zachary listed, however, on the final page the same medical findings. We cannot engage in conjecture as to why Dr. Zachary did not list such medical findings *ad nauseam* for each question, that is an assessment properly reserved for the Commissioner on remand. We can, however, positively state that the latest report does point to some medical evidence relied upon and states more definitively what Plaintiff's limitations are and could aid the Commissioner in assessing the weight to be accorded Plaintiff's treating physician's opinions. We therefore find the report to be material.

In determining the final disposition of this matter, the most equitable judgment must be implemented. The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.") (cited in *Rosa v. Callahan*, 168 F.3d at 82-83). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker v.*

*Harris*, 626 F.2d at 235; *see also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("Where, however, the reversal 'is based solely on the [Commissioner's] failure to sustain her burden of adducing evidence of the claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can engage in sedentary work is not supported by substantial evidence, no purpose would be served by [the court] remanding the case for rehearing." (citing *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998) (alterations in original)); *Rosa v. Callahan*, 168 F.3d at 83 (remand solely for calculation of benefits is warranted when the court has no "apparent basis to conclude that a more complete record might support the Commissioner's decision"); *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992).

"Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally . . . remand the matter to the Commissioner for further consideration." *Curry v. Apfel*, 209 F.3d at 124. Accordingly, as explained above, because of several legal errors committed by the ALJ in reaching a determination of Plaintiff's residual functional capacity, the Court need not – indeed, cannot – reach the question of whether the Commissioner's denial of benefits was based on substantial evidence. Furthermore, because new and material evidence exists which may be probative on not only Plaintiff's RFC, but also whether jobs exist in the national economy, a remand is appropriate for consideration therein.

A remand under Sentence Six of 42 U.S.C. § 405(g) is only proper where new evidence needs consideration. In such cases, the claimant must show that the new evidence is material and that good cause exists for its failure to incorporate the evidence into the prior proceedings. *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). Here, notwithstanding the ALJ's failure to make explicit findings, we find that a remand pursuant to Sentence Six would be more appropriate in light of the

new and material evidence submitted.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **REVERSED** and this action be **REMANDED** to the Commissioner pursuant Sentence Six of 42 U.S.C. § 405(g); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

IT IS SO ORDERED

Dated:      May 12, 2006
            Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge